**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LN MANAGEMENT, LLC SERIES 5664 DIVOT, *Plaintiff-Appellant*, v. JPMORGAN CHASE BANK, N.A., *Defendant-Appellee*, FEDERAL NATIONAL MORTGAGE ASSOCIATION; FEDERAL HOUSING FINANCE AGENCY, *Counter-Claimants-Appellees.* | No. 18-15402 D.C. No. 2:13-cv-01420-RCJ-GWF |

| | |
|---|---|
| LN MANAGEMENT, LLC SERIES 5664 DIVOT, *Plaintiff-Appellee*, v. FEDERAL NATIONAL MORTGAGE ASSOCIATION; FEDERAL HOUSING FINANCE AGENCY, *Counter-Claimants-Appellants.* | No. 18-15510 D.C. No. 2:13-cv-01420-RCJ-GWF OPINION |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Submitted February 7, 2020[*]
Pasadena, California

Filed April 24, 2020

Before:  Danny J. Boggs,[**] Sandra S. Ikuta,
and Kenneth K. Lee, Circuit Judges.

Opinion by Judge Boggs

## SUMMARY[***]

### Joinder / Diversity Jurisdiction

The panel vacated the district court's judgment in a case raising claims after a Nevada homeowners' association ("HOA") commenced foreclosure proceedings; held that diversity jurisdiction existed and the Federal Foreclosure Bar applied; and remanded for further proceedings.

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

In March 2003, Kit Dansker obtained a home loan to purchase real property in Las Vegas, Nevada.   On October 3, 2009, Dansker died.  In 2011, the neighborhood HOA began foreclosure proceedings, and sold the property to LN Management, LLC.   The priority lienholder was Fannie Mae, and the Federal Housing Finance Agency (FHFA). The district court held that LN Management had not identified any legal representative of Dansker's estate, and since no such person was identified and joined, complete diversity existed.  The district court then turned to the merits, and granted Fannie Mae's loan servicer, JPMorgan Chase Bank, N.A.'s motion to dismiss on the grounds of then-prevailing precedent, *Bourne Valley Court Tr. V. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016).   The Nevada Supreme Court subsequently declined to endorse the holding in *Bourne Valley*.

The panel held as an issue of first impression in this court that Dansker, as a dead person, was not a proper person to be sued.  The panel held that the dead lack the capacities that litigants must have to allow for a true Article III case or controversy. The panel further held that when a dead person is named as a party, the dead person's prior citizenship is irrelevant for diversity citizenship purposes when a controversy is between citizens of different states.

The panel held that diversity did in fact exist at the time of removal where the lawsuit was against JPMorgan Chase and Kit Dansker, and Dansker, being dead, had no legal existence, and, therefore, was not a citizen of any state.  The panel further held that the district court did not abuse its discretion by denying LN Management's motion to substitute, for Dansker, the "Estate of Kit Dansker" where there was no indication in the record that probate proceedings were ever initiated by the Nevada courts in

Dansker's regard, nor who the correct legal representative of Dansker's estate was or is. The panel concluded that diversity jurisdiction continued to exist.

Because the theory on which the district court found in favor of JPMorgan and FHFA and Fannie Mae on summary judgment was flawed, the panel vacated the district court's decision, and remanded.

## COUNSEL

Kerry P. Faughnan, North Las Vegas, Nevada, for Plaintiff-Appellant/Cross-Appellee.

Howard N. Cayne, Asim Varma, Michael A.F. Johnson, Dirk C. Phillips, Lindsey D. Carson, and Omomah I. Abebe, Arnold & Porter Kaye Scholer LLP, Washington, D.C.; Abran Vigil, Bllard Spahr LLP, Las Vegas, Nevada; Leslie Bryan Hart and John Tennert, Fennemore Craig P.C., Reno, Nevada; for Defendants-Appellees/Cross-Appellants.

## OPINION

BOGGS, Circuit Judge:

There are a number of ways to accomplish litigation regarding interests once held by a dead person. One can institute or join probate proceedings, for instance, or sue the executor of an estate in courts of general jurisdiction, or in some circumstances proceed directly against the successors of the deceased. Rarely do we see efforts to actually engage the dead in litigation. This case turns on such a question,

which is of first impression in this circuit: can you sue a dead person?[1]

The answer may seem obvious. Yet strangely, in the 129-year history of this court, we have never been called upon to rule on this issue. We do so today, and we resolve the question in the negative.

## I. Facts

This case is an appeal from yet another Homeowner's Association (HOA) foreclosure in Nevada that is being challenged by the mortgagor, the Federal Housing Finance Agency (FHFA), and Fannie Mae. Nevada law allows a homeowners' association to foreclose on a property that is more than a certain number of months in arrears, notwithstanding the interest of the holder of any lien that might otherwise have priority, such as a mortgage. *See* Nev. Rev. Stat. § 116.3116(2); *Berezovsky v. Moniz*, 869 F.3d 923, 925 (9th Cir. 2017). Unsurprisingly, such procedures

---

[1] There is ample extrajudicial literature bearing on this question. Dead men, we know from multiple authorities, would not make good litigants. They "tell no tales," so they would be bad witnesses and deponents. *See* PIRATES OF THE CARIBBEAN: DEAD MEN TELL NO TALES (Walt Disney Pictures 2017). Since "you can't take it with you," they are judgment-proof defendants. *See* GEORGE S. KAUFMAN & MOSS HART, YOU CAN'T TAKE IT WITH YOU 75 (Dramatists Play Svc., Inc. 1937). And there is persuasive authority that, in whichever of the two traditional locations the deceased is now to be found, obtaining personal jurisdiction and serving of process would be difficult. *See U. S. ex rel. Mayo v. Satan & his Staff*, 54 F.R.D. 282, 283 (W.D. Pa. 1971) (finding no personal jurisdiction over defendant notwithstanding the "unofficial account" of *The Devil and Daniel Webster*); *State Senator Ernie Chambers v. God*, No. 1075-462, (Neb. Douglas Cty. Dist. Ct. Oct. 8, 2008) (dismissing case due to impossibility of service on Defendant), *appeal dismissed; order vacated* (Neb. Ct. App., No. 08-1180, Feb. 25, 2009).

have led to much litigation, particularly when the priority lienholder is Fannie Mae or the FHFA, which currently holds Fannie Mae in conservatorship. In such cases, the Housing and Economic Recovery Act (HERA) imposes a bar (the Federal Foreclosure Bar) to a foreclosure that would extinguish the interest of Fannie Mae or the FHFA without the FHFA's consent. *See* 12 U.S.C. § 4617(j)(3); *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1140–41 (9th Cir. 2018); *Berezovsky*, 869 F.3d at 926–27.

The case before us had its origins in March 2003, when Kit Dansker obtained an $83,000 home loan from Washington Mutual Bank, F.A. to purchase a home at 5664 Divot Place in Las Vegas, Nevada. In April of that year, Fannie Mae purchased the loan and took ownership of the note and Deed of Trust. Five years later, in July 2008, in response to the global financial crisis, Congress passed the Housing and Economic Recovery Act of 2008 (HERA), establishing the Federal Housing Finance Agency (FHFA). HERA contains a provision, the Federal Foreclosure bar, which mandates that "[n]o property of the agency shall be subject to . . . foreclosure . . . without the consent of the Agency." 12 U.S.C. § 4617(j)(3). As authorized by HERA, the FHFA took Fannie Mae into conservatorship that September, where it remains to this day.

Meanwhile, on October 3, 2009, Dansker died. In 2011, the neighborhood HOA began foreclosure proceedings against 5664 Divot Place, and in March 2013 it sold the property at foreclosure sale to LN Management for $8,030. Neither the FHFA nor Fannie Mae ever consented to this HOA sale extinguishing the federal financial bodies' interest in the property.

In May 2013, LN Management filed a quiet-title action in Nevada state court against Kit Dansker and JPMorgan

Chase Bank, N.A., which in May 2013 had become the record beneficiary of the deed of trust as Fannie Mae's loan servicer. Because of the sheer number of Nevada HOA foreclosure cases over the past decade, as well as the interplay between state and federal courts, the law in this area has evolved repeatedly and rapidly. As a result, this case, like many others, had a convoluted path through the courts. First, JP Morgan Chase removed the case to federal court on the basis of diversity, arguing that Dansker was fraudulently joined. On September 5, 2013, LN Management made a formal Suggestion of Death, through which it entered Dansker's death certificate into the record, evidencing her death four years earlier. On October 30, LN Management moved to substitute "the Estate of Kit Dansker" as a defendant instead of Kit Dansker. LN Management stated that it "has also discovered that no one has effectuated any probate action, therefore this action should continue, but with the estate of Kit Dansker named as the property real party in interest." As the close-eyed reader can see, the very fact that no probate action had been initiated (through the correct state procedures) created an anomaly when it came to the proposed joinder of the estate: how was it to be joined? Through whom? The motion did not say, exactly. The attached memorandum of law stated that, "Plaintiff has not found … [a probate] proceeding, but has located at least one person, a Lori Weber, who claims to be the daughter of the decedent, which [sic] would be a proper person to serve on behalf of the estate of Kit Dansker, if the estate is substituted in as the real party in interest in place of Kit Dansker. FRCP 17(a)(1)."

In November, the United States District Court for the District of Nevada ruled that Dansker was fraudulently joined, denied LN Management's motion to remand, and granted JPMorgan Chase's motion to dismiss. The court,

while noting Dansker's death, did not base its fraudulent-joinder ruling on these grounds; rather, it held that the joinder was fraudulent because the foreclosure had extinguished any possible right Dansker might have to the property. In a one-line comment, it also denied a motion to substitute the Estate of Kit Dansker, for the same reason. The district court then dismissed the action for failure to state a claim, holding under a then-current district court precedent that an HOA foreclosure under Nevada's law did not extinguish the rights of the holder of a first mortgage. *See Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222 (D. Nev. 2013). LN Management appealed.

While that appeal was pending, the Nevada Supreme Court ruled in *SFR Investments Pool 1, LLC v. U.S. Bank*, 334 P.3d 408 (Nev. 2014), that a HOA foreclosure did indeed extinguish the rights of the holder of a preexisting mortgage. *Id.* at 419. LN Management and JPMorgan Chase therefore jointly requested that the appeal be dismissed, following which the district court, at the agreement of both parties, vacated the dismissal that it had been previously entered. Now the case was back before the district court. At this point, Fannie Mae and the FHFA moved successfully to intervene. The federal parties then moved for summary judgment on the basis of the Federal Foreclosure Bar. The district court denied this motion in September 2015, ruling that the fact that Fannie Mae did not appear as the record beneficiary of the deed of trust "create[d] a genuine issue of material fact as to whether the FHFA or Fannie Mae owned the note and deed of trust at the time of [the HOA] sale."[2]

---

[2] This common situation, in which a bank rather than Fannie Mae appeared as the record beneficiary on the original mortgage, created two

In April 2017, the district court granted "several months" for jurisdictional discovery because, as it later noted, "diversity depended on the citizenships of any successor(s)-in-interest of the deceased homeowner (Kit Dansker) . . . ." Then, on December 7, 2017, LN Management renewed its motion to substitute the estate of Kit Dansker as the real party in interest in place of Kit Dansker. Despite the jurisdictional discovery period, the renewed motion was not materially different than the previous one, because it still did not identify a representative of the estate. It stated (in slightly more definitive language than the first time around) that "Plaintiff had located a daughter of the decedent, who lives in Nevada, which [sic] would be a proper person to serve on behalf of the estate of Kit Dansker, if the estate is substituted in . . . ." LN Management further requested time to "serve Lori Weber, *a beneficiary* of the estate of the deceased, Kit Dansker."

---

distinct questions for courts in the Nevada HOA cases. The first was whether Fannie Mae and the FHFA retained a property right in the mortgages, so as to invoke the Federal Foreclosure Bar. *Cf. Berezovsky*, 869 F.3d at 932. The second was whether the type of evidence typically presented—the records of the federal financial bodies and the declarations of their representatives—was admissible and sufficient to support summary judgment. *Cf. id.* at 932–33 & n.8.

At the time the district court in this case ruled, it relied on a 2012 Nevada Supreme Court case, *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 254 (Nev. 2012), to hold that there was a triable issue of fact on the first inquiry and doubts as to the sufficiency of the evidence on the second. As will be seen, we have since clarified that the controlling Nevada precedent is *In re Montierth*, 354 P.3d 648, 650–51 (Nev. 2015), and that under it, the property right that Fannie Mae and the FHFA had in the mortgage here was sufficient to invoke the Federal Foreclosure Bar and the type of evidence involved was admissible and sufficient. *See Berezovsky*, 869 F.3d at 932–33 & n.8.

In 2018, the district court entered a second summary-judgment ruling, which is the one that is on appeal today. First, the court noted that, notwithstanding the jurisdictional-discovery process, "the parties had not identified any [of Dansker's] successors." "The dispositive fact was therefore that no non-diverse party had been joined." In the absence of identifiable successors, the court noted, "LN now argues that the Court should consider Dansker's estate to be a defendant (and to substitute the estate for Dansker, if necessary), and that under § 1332 the citizenship of the estate is the same as Dansker's citizenship at the time of her death, i.e., Nevada, which would destroy diversity." But LN had "neither identified any legal representative of Dansker's estate nor, to the Court's knowledge, made any effort to have one appointed" under state law in the five years (at the least) since learning of Dansker's death. And "Dansker's estate, like Dansker's memory, is an abstract concept that cannot be sued except through a legal representative who can appear to defend the interests of the heirs (whether yet determined or not) in any remaining estate property." Since such a person had not been identified and joined, the court found, complete diversity existed. Moreover, the court also ruled that:

> The Court denies the separate motion to substitute "the Estate of Kit Dansker" for Kit Dansker. First, Kit Dansker is not even a proper party who can be substituted for. She died before the action was filed, and no legal representative has ever appeared. Second, her estate is not a juridical entity that can sue or be sued except through a representative, and LN identifies none.

Having so ruled, and having found that there was complete diversity, the district court then turned to the merits. It

granted JPMorgan Chase's motion to dismiss on the grounds of our then-prevailing precedent, *Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), which held that Nevada's HOA foreclosure statute was unconstitutional for lack of due process. *Id.* at 1160. This appeal followed.

The FHFA and Fannie Mae, meanwhile, cross-appealed the district court's denial of their motion for summary judgment on the basis of the Federal Foreclosure Bar and its denial as moot of their quiet-title and declaratory-judgment counterclaims. The cross-appeal is also before us in this case.

## II.  Standards of Review

We review a district court's grant or denial of summary judgment *de novo*. *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 859 (9th Cir. 2011); *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1163 (9th Cir. 1995).

"Removal presents a question of subject matter jurisdiction, which is reviewed de novo." *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002). We review the decision to allow substitution under Fed. R. Civ. P. 25 for an abuse of discretion. *See In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000); *Charles v. Burton*, 169 F.3d 1322, 1327 n.6 (11th Cir. 1999). Similarly, we review the denial of a Fed. R. Civ. P. 15 motion to amend for abuse of discretion. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

## III.  Legal Analysis

Since the filing of this appeal, changes in or clarifications of the law have caused each party to abandon positions taken at the district court. The Nevada Supreme Court, in response

to a certified question from the federal District Court for the District of Nevada, clarified in 2018 that the HOA statute was subject to certain procedural protections of Nevada law (which the *Bourne Valley* court had held did not apply in such cases) and thus complied with constitutional due-process requirements. *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248, 1251–53 (Nev. 2018); *see Bourne Valley*, 832 F.3d at 1159. Therefore, the Nevada Supreme Court declined to endorse the holding of *Bourne Valley*. *SFR Invs.*, 422 P.3d at 1253. JPMorgan and the federal financial bodies concede, for the purposes of this case only, that the theory on which the district court found in their favor at summary judgment was flawed. For that reason, though the defendants below ultimately do prevail today, we must vacate the decision below.

On appeal, the federal financial bodies and JPMorgan Chase rely, however, on another theory. They argue that the Federal Foreclosure Bar should apply to this case and that the district court erred in not granting summary judgment on this point. Here it is LN Management that gives way. Since the district court issued its 2015 ruling denying the federal defendants' motion for summary judgment on the grounds of the Federal Foreclosure Bar, we have clarified that the Federal Foreclosure Bar does indeed apply in situations, such as the one in this case, where the federal entity is not the record beneficiary on the deed of trust but can prove its property interest through admissible evidence. *See Berezovsky*, 869 F.3d at 932; *Fed. Home Loan Mortg. Corp. v. SFR*, 893 F.3d at 1149–50.[3] In its Third Brief on Cross-Appeal, LN Management concedes that the FHFA's "arguments [regarding the applicability of the] Federal Foreclosure Bar "are persuasive." Failure to respond

---

[3] *See also supra* note 2.

meaningfully in an answering brief to an appellee's argument waives any point to the contrary. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009). We are, moreover, satisfied that, as we have ruled over and over again recently, the Federal Foreclosure Bar does indeed apply to such situations.[4]

Such a conclusion (or admission) is fatal to LN's case on the merits. That would be that, therefore, except that LN Management raises two separate arguments as to why we lack subject-matter jurisdiction and thus that this case must be remanded to state court. First, LN Management argues that "original diversity jurisdiction never existed in the case," because LN Management had originally tried to join Ms. Dansker (the deceased former resident of the foreclosed house) and the district court's 2013 order finding this to be fraudulent joinder rested on an erroneous, since-discarded precedent. Secondly, LN Management points out that it had sought in 2013 and 2017 to have Ms. Dansker's estate joined, which the district court denied each time. It now argues that these denials were error.

As to the first argument, we held in another HOA-foreclosure case that attempts to join the former homeowner do not constitute fraudulent joinder. *See Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1113–14 (9th Cir. 2016). But *Weeping Hollow* concerned the joinder of a *living* owner. Dansker was dead at the time the joinder was

---

[4] In addition to *Berezovsky* and *Federal Home Loan Mortgage Corp. v. SFR*, *see, e.g.*, *Williston Inv. Grp., LLC v. JPMorgan Chase Bank, NA*, 736 F. App'x 168, 169 (9th Cir. 2018); *JP Morgan Chase Bank v. Las Vegas Dev. Grp., LLC*, 740 F. App'x 153, 154 (9th Cir. 2018); *Elmer v. JPMorgan Chase & Co.*, 707 F. App'x 426, 427–28 (9th Cir. 2017); *Saticoy Bay, LLC, Series 2714 Snapdragon v. Flagstar Bank, FSB*, 699 F. App'x 658, 659 (9th Cir. 2017).

attempted. Thus, we turn squarely to the question: can you sue a dead person?

### A.  Can "I Sue Dead People?"

Dansker, as a dead person, was not a proper person to be joined, regardless of *Weeping Hollow*. As it turns out, we have never had to explicitly rule before that a dead person, *qua* a dead person (as opposed to the dead person's estate, of which, more later) cannot sue, be sued, or be joined to a lawsuit. We surmise that that is because such a rule is (and has been) self-evident. Nevertheless, it turns out at least three of our sister circuits and several district courts, in this circuit and elsewhere, have had to address this issue. Since a litigant's citizenship for diversity purposes is a question of federal common law, rather than state law, *see Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983), we look now to those cases to inform our judgment. These cases have tended to arise out of a few common factual scenarios: an attorney simply does not know an opposing party is dead when he files a lawsuit; or the attorney (racing against a deadline) makes a mistake when filing a claim on behalf of a recently-deceased client; or, in the mass-harm-litigation context, there are simply too many parties to have ascertained whether a particular one of them is living or dead. In all events, the consensus of our sister courts is unanimous: you cannot sue a dead person. Indeed, most of these cases take that point nearly for granted, focusing instead on the issue of whether and under what circumstances substitution ought to be allowed.

In 1969, the Fifth Circuit confronted a lawsuit filed by the Mizukamis, who were citizens of Japan, against Peter Buras, a Texan, who had hit and killed their relative Shasaku Mizukami with his pickup truck, and against Connecticut Fire Insurance Company, Buras's insurer. *Mizukami v.*

*Buras*, 419 F.2d 1319, 1320 (5th Cir. 1969). Buras, however, had died between the time when he hit Shasaku and when the Mizukamis filed suit. *Ibid.* When the Mizukamis discovered this, they moved to substitute Buras's heirs under Federal Rule of Civil Procedure 25(a)(1). In a short per curiam opinion, the Fifth Circuit concluded that "the rule contemplates substitution for someone who had been made a party before his death. It is not available to the appellants in the present case since Buras predeceased the filing of the action." *Ibid.* The Fifth Circuit did not provide its reasons explicitly as to why the action could not be sustained as against Buras, but provided a citation to a district court decision, *Chorney v. Callahan*, 135 F. Supp. 35 (D. Mass. 1955), that made it plain enough. *See Mizukami*, 419 F.2d at 1320. *Chorney* was another lawsuit arising out of a car crash in which the driver-defendant turned out to have died before suit was filed. 135 F. Supp. at 36. As in *Mizukami*, the plaintiff attempted to substitute the administrator of the decedent's estate. *Ibid.* A suit against someone who is "already dead[,]" the *Chorney* court held, is "a nullity[.]" *Ibid.* Therefore, no substitution was available because "[t]here was no action really existent in which he could be substituted." *Ibid.* In any event, it was "obvious[]" that a "dead man . . . cannot be named party defendant in an action." *Ibid.*[5]

---

[5] We took note of *Mizukami* in *Gilmore v. Lockard*, 936 F.3d 857, 864 n.4 (9th Cir. 2019). That case involved a § 1983 suit brought by Gilmore against several prison guards, one of whom died after being sued but before service of process. *Id.* at 859, 862–63. In overturning the denial of Gilmore's motion to substitute the prison guard's "successor or representative," Fed. R. Civ. P. 25(a), we noted in passing that *Mizukami* was "inapposite since that suit was filed *after* the defendant's death, and Rule 25(a) presupposes that the deceased was already a party in the action prior to death." *Id* at 864 n.4.

In 2004 the Tenth Circuit confronted the question of the substitution of a dead plaintiff, rather than a dead defendant. *Esposito v. United States*, 368 F.3d 1271 (10th Cir. 2004), concerned a Federal Tort Claims Act lawsuit filed on behalf of a prisoner, alleging that his death had been "the result of a negligent failure to provide him with adequate medical attention" while incarcerated. *Id.* at 1272. His attorney filed suit the day before a deadline, and, whether from the rush or due to admitted inexperience, named Esposito, rather than his surviving spouse, as the plaintiff. *Id.* at 1272–73. The district court held, and the government argued on appeal, that substitution could not be allowed because the action was, *ab initio*, a nullity and therefore the district court lacked subject-matter jurisdiction. *Id.* at 1272. The circuit court considered explicitly "whether substitution is in fact necessary or whether the action can be pursued in the name of Mr. Esposito[.]" *Id.* at 1273. It had no trouble deciding that Esposito could not pursue the action, because (in relevant part) as a dead person, he both lacked the capacity to sue and was no longer the real party in interest. *Id.* at 1273–74. As with *Mizukami*, the crux of the action was on whether substitution could be allowed.**[6]**

---

**[6]** The Fifth Circuit decision in *Mizukami* was at base an interpretation of Rule 25(a), which, as that court saw it, "contemplates substitution for someone who had been made a party before his death" and therefore "is not available" to substitute someone who died before they ever became a party. *Mizukami*, 419 F.2d at 1320; *cf.* Fed. R. Civ. P. 25(a) (referring to the death of "a party" whose "claim is not extinguished"). The Tenth Circuit in *Esposito*, on the other hand, was interpreting Fed. R. Civ. P. 17, which addresses the substitution for the previous (incorrect) plaintiff one who is the real party in interest. This rule contains affirmative language enjoining courts "not [to] dismiss an action for failure to prosecute in the name of the real party in interest until . . . a reasonable time has been allowed for the real party in interest to . . . be substituted into the action. After . . . substitution, the action

The most recent circuit decision to address the question of whether the dead can sue or be sued is *House v. Mitra QSR KNE LLC,* 796 F. App'x 783 (4th Cir. 2019). This unpublished but thorough Fourth Circuit opinion gives a persuasive overview of the law in this area. House was the manager of a restaurant who suffered from alcoholism. When his employer terminated him while House was in a treatment program, House filed a discrimination charge with the EEOC under the ADA. House unfortunately died, but his counsel, who faced a filing deadline on the same day that he was informed of his client's passing, commenced the suit in House's name. He then moved to substitute. The Fourth Circuit saw the core difficulty in trying to address a suit filed on behalf of a dead plaintiff as one of Article III standing:

> Absent a plaintiff with legal existence, there can be no Article III case or controversy. "The most elemental requirement of adversary litigation is that there be two or more parties. There must be a real plaintiff at the inception of the suit. . . ." Wright &

proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3). The Tenth Circuit saw this distinction as rendering *Mizukami* "not on point." 368 F.3d at 1277. Instead, it held that "Rule 17(a) is designed to prevent forfeitures, and as such must be given broad application." *Id.* at 1278. Observing that "nothing in Rule 17(a) requires that the original plaintiff have capacity to sue[,]" it ruled that substitution should be allowed and "shall have *the same effect as if* the action had been commenced in the name of the real party in interest." *Id.* at 1277–78 (quoting Fed. R. Civ. P. 17(a) (emphasis added)). In a separate section, relying on the commentary to the Rule, the court stipulated that the original mistake also had to be "honest." *Id.* at 1276–77. While the Tenth and the Fifth Circuits are therefore not technically in a circuit split, the Tenth Circuit's ruling *is* incompatible with the constitutional rule embraced by the Fourth Circuit in the next case we examine. That case, however, is unpublished.

Miller, § 3530. Only an actual and live plaintiff can "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions[.]" *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *see also Ellis v. Dyson*, 421 U.S. 426, 434, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975) (expressing "grave reservations about the existence of an actual case or controversy" in challenge to loitering ordinance because putative plaintiffs had not been heard from in a year). By the same token, a plaintiff without legal existence is a poor fit for the Article III standing trifecta of injury, causation, and redressability; it is not clear, for example, how a favorable court ruling could offer redress to a deceased person, or a party otherwise lacking legal existence. *See ChinaCast Educ. Corp. v. Chen Zhou Guo*, No. CV 15-05475-AB, 2016 WL 10653269, at \*2 (C.D. Cal. Jan. 8, 2016) (considering "the fundamental standing question of whether" alleged injuries can be redressed "if Plaintiff no longer legally exists"). But however we frame the jurisdictional defect here, the outcome is the same: "There is no plaintiff with standing if there is no plaintiff." *In re: 2016 Primary Election*, 836 F.3d 584, 587–88 (6th Cir. 2016).

\* \* \*

Absent legal existence at the outset of this litigation, House could not have "a personal stake in the outcome of the controversy" sufficient "to warrant his invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Because House personally stands to gain or lose nothing from the suit, no matter how it is resolved, he cannot avail himself of the jurisdiction of the federal courts.

*Id.* at 787–88. In short, "a deceased plaintiff lacks Article III standing." *Id.* at 784.[7] We find the Fourth Circuit's observations persuasive. Plaintiffs, to be sure, have to undergo a standing analysis—injury, causation, and redressability—to which defendants are not subject. But we do not see that as the heart of the Fourth Circuit's reasoning here, but rather as an illustration of it. The core observation is that the dead lack the capacities that litigants must have to allow for a true Article III case or controversy. We find this obvious, but sometimes stating the obvious is necessary.

---

[7] Because it grounded its decision in constitutional standing, the *House* court distinguished *Esposito*, writing:

[T]he [*Esposito*] court failed to address the jurisdictional implications of a deceased plaintiff, holding only 'that [the plaintiff's] *lack of capacity* at the time the suit was filed d[id] not prevent the substitution from relating back to the date the suit was filed under Rule 17(a).' [*Esposito*, 368 F.3d]. at 1278.

*House*, 796 F. App'x at 789.

There is a further difference between *House* and our case. In *House*, because the sole plaintiff was dead, once he lacked standing, then, unless substitution was allowed, the entire case became a nullity. In our case, if LN Management could not proceed against Dansker, they nevertheless still had a live case or controversy against Fannie Mae, the FHFA, and JPMorgan Chase, which they could continue to pursue in federal court. Indeed, this is the core of the diversity question. Substitution then becomes a separate question, which is examined in section III.B below. Meanwhile, we continue our assessment of federal common law by turning to cases from the nation's district courts.

The federal defendants in our case cite two district court cases from outside our circuit. One of those cases, *Fulford v. Mkt. St. Mortg. Corp.*, No. 05-cv-336, 2005 WL 3263884 (M.D. Ala. Dec. 1, 2005), is remarkably on point. As in the case before us, the plaintiffs sued both an out-of-state corporation and an in-state person, who turned out to have died before the lawsuit was instituted. *Id.* at *1. The result: complete diversity. "If a plaintiff joins with a nonresident defendant a dead man, who was a resident of the same state with the plaintiff in his lifetime, there is still complete diversity of citizenship, no matter how sincerely the plaintiff believed that the dead man was a living man." *Id.* at *3 (*quoting State of Missouri v. A.B. Collins & Co.*, 34 F. Supp. 550 (W.D. Mo. 1940)). The second case cited by the federal defendants is *In re Engle Cases*, No. 3:09-cv-10000-J-32, 2013 WL 8115442 (M.D. Fla. Jan. 22, 2013), in which a district court was confronted with thousands of individual cases filed against a cigarette company by smokers. 521 of these would-be plaintiffs turned out to have been dead by the time the action was filed. *Id.* at *1. The court held that "a lawsuit filed in the name of a deceased individual is a nullity over which this Court has no jurisdiction" because "a

deceased individual cannot be a party to a lawsuit." *Id.* at *2. The issue on which the parties truly jousted was, yet again, substitution.[8]

Several of our district courts have followed *Mizukami* or similar cases in holding that Rule 25 substitutions are unavailable when the defendant for whom substitution is sought was dead before the commencement of the action, which was therefore a nullity. *See Gabor v. Deshler*, No. 17-CV-01524-LHK, 2017 WL 4151042, at *12 (N.D. Cal. Sept. 19, 2017); *Lacy v. Tyson*, No. 1:07-cv-00381, 2012 WL 4343837, at *2 (E.D. Cal. Sept. 20, 2012); *Rhodes v. Gordon*, No. CV 12-2863-JGB (DTB), 2013 WL 3780378, at *18 & n.14  (C.D. Cal. July 16, 2013), *report and recommendation adopted*, No. CV 12-2863-JGB (DTB), 2013 WL 12072123, at *1 (C.D. Cal. Sept. 26, 2013). For a case in which the decedent was the plaintiff, and therefore the applicable Rule was Fed. R. Civ. P. 17(a), *see Cacossa v. Amylin Pharm., Inc.*, No. 3:12-cv-03020-AJB (MDD), 2014 WL 2090552, at *3 (S.D. Cal. May 16, 2014). The significant point for our purposes today is that none of these courts considered an answer to the dilemma of substitution to be allowing the case to proceed against (or on behalf of) the dead person. Looking outside our circuit, moreover, a significant number of other district courts have ruled that the

---

[8] On appeal, the issue of whether the lawsuits could have been maintained in the name of the dead was uncontested. *In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014) ("It is uncontested that the personal injury cases were properly dismissed—whether nullities *ab initio* or not—if the complaints cannot now be amended to substitute in the personal representatives of the decedents' estates and allege wrongful death claims or survival claims on their behalf." Nevertheless, the Eleventh Circuit felt comfortable proclaiming that, "As any lawyer worth his salt knows, a dead person cannot maintain a personal injury claim[.]" *Id.* at 1086–87.

dead cannot sue or be sued. *See House*, 796 F. App'x at 788 (collecting cases); *Lacy*, 2012 WL 4343837, at *2 (collecting cases in the Rule 25 context).

In addition, there are sound logical reasons not to allow suits against the dead. Our concern is not, primarily, injustice to the deceased.**[9]** Rather, if lawsuits against the dead were

---

**[9]** There are historical examples where this *was* the concern—and which, if we take a very broad view of the term, may even constitute precedent (albeit from foreign jurisdictions) contrary to the decision we reach today. In January 897, Pope Stephen VII exhumed his predecessor and rival, Pope Formosus, and put Formosus on trial in the so-called "Cadaver Synod," named for the physical presence of the deceased in the courtroom. *See Donald E. Wilkes, Jr., The Cadaver Synod: Strangest Trial in History*, POPULAR MEDIA Paper No. 42 (2001), *available at* https://digitalcommons.law.uga.edu/fac_pm/42. *See also Robert Browning, The Ring and the Book*, Bk. X ln. 30–31, *reprinted in* 4 THE COMPLETE WORKS OF ROBERT BROWNING 463–68 (New Century Library 1899) ("Read,—how there was a ghastly Trial once/Of a dead man by a live man, and both, Popes"); *id.* at 1–161. We note however that this court may have jurisdiction that exceeds our own. *See Matthew* 16:18–19.

Meanwhile, in the Netherlands in the 17th century, after Maurits, Prince of Orange, deposed the Oldenbarnevelt regime in a coup, Oldenbarnevelt's secretary, Gilles van Ledenberg, committed suicide in prison in an attempt to save his estate from forfeiture. He was, notwithstanding, tried and found guilty (and "hanged" in his coffin). *See* 2 JOHN LOTHROP MOTLEY, THE LIFE AND DEATH OF JOHN OF BARNEVELD 394 (Harper & Bros. 1879), *available at* https://tinyurl.com/u7wcxol. This may remind readers of the more familiar—to the English-speaking world—posthumous execution of Oliver Cromwell. Cromwell, however, was not tried, but rather posthumously attainted. *See* ANTONIA FRASER, CROMWELL 691–92 (Knopf 1973).

While such cases are fascinating historical oddities, they provide an extreme example of the obvious injustice—and grotesqueries—that

allowed, injustice to the living would result. In this case, if Dansker's heirs did have a viable claim to the property (something very much in doubt), then a suit against the dead Dansker would allow the plaintiff to create the *appearance* of a true quiet-title action while in fact avoiding notifying those who could actually defend their rights, i.e. the representative of the estate. As a formal matter, we acknowledge the force of the Fourth Circuit's analysis that the dead do not provide the requisite adversarialness to make them parties to an Article III case or controversy. More generally, we are confident that allowing proceedings against the dead would, in this case and many others, deprive the living of due process. We therefore join our sister circuits in holding that a party cannot maintain a suit on behalf of, or against, or join, a dead person, or in any other way make a dead person (in that person's own right, and not through a properly-represented estate or successor) party to a federal lawsuit. And by extension, when a dead person is named as a party, the dead person's prior citizenship is irrelevant when determining whether the controversy "is between . . . citizens of different States." 28 U.S.C. § 1332(a).

We note, however, that we do not today rule on the tricky substitution questions that divided the Fifth Circuit in *Mizukami* and the Fourth in *House*, on the one hand, from the Tenth in *Esposito*, on the other. Because one cannot maintain a suit against a dead person, it follows that LN Management's argument that "when the matter was removed, there was no diversity of the parties and therefore no subject matter jurisdiction of the district court" is simply wrong. There *was* diversity when the case was originally removed, because the lawsuit—as LN Management

---

would result from bringing the dead into court in their own capacity. (If capacity is even a word that can be used in such circumstances.)

acknowledges—was against JPMorgan Chase and Kit Dansker, the latter of whom, being dead, had no legal existence and therefore was not a "citizen[]" of any state. 28 U.S.C. § 1332(a). Whether or not substitution ought to be allowed, notwithstanding that the party had been dead *ab initio*, is—as we have seen—a trickier question. Luckily, it is not one we have to resolve today, nor do we. As we discuss in the next section, the denial of the motion to substitute is evaluated under an abuse-of-discretion standard that LN Management cannot, in our case, overcome. In any event, diversity jurisdiction did in fact exist at the time of removal.

## B.

Thus, LN Management turns to its second argument: it had sought in 2013 and 2017 to have Ms. Dansker's estate joined, which the district court denied each time. It now argues that these denials were error.

As noted, we review the decision to allow substitution under Rule 25 for an abuse of discretion. *See In re Bernal*, 207 F.3d at 598; *see also Charles*, 169 F.3d at 1327 n.6. Similarly, we review the grant or denial of motions to amend under Fed. R. Civ. P. 15 for abuse of discretion. *Allen*, 911 F.2d at 373. LN Management made its motion "upon . . . FRCP 17(a)[,]" but as defendants rightly observe, Fed. R. Civ. P. 17(a) addresses the proper party to *prosecute* an action, not to defend it. The district court did not address this discrepancy when it ruled on the substitution motions. We could construe the request to replace Dansker with "the Estate of Kit Dansker" as a motion to substitute under Rule 25(a) or, as LN Management now requests, as a request to amend the pleadings under Rule 15. Either way, the standard would remain the same (abuse of discretion)—as it would even if Rule 17(a) were the correct vehicle. *See Jones v. Las*

*Vegas Metro. Police Dep't*, 873 F.3d 1123, 1128 (9th Cir. 2017).

It is for this exact reason that we do not have to decide today whether to adopt the *Mizukami* rule (disallowing substitution for a dead person no matter how good the cause, because Rule 25 speaks only of substituting for claims that had previously existed and thus does not apply), or a more lenient and flexible rule based on something like the Tenth Circuit's logic in *Esposito*. We leave that for a later court. Even if a district court *could* order substitution for a party dead *ab initio*, under Rule 25(a), LN Management cannot show that this district court abused its discretion in declining to do so.

LN Management requested the substitution, for Dansker, of "the Estate of Kit Dansker." But "[a]n estate is not a person or a legal entity and cannot sue or be sued; an estate can only act by and through a personal representative and therefore any action must be brought by or against the executor or representative of the estate." 34 C.J.S. Executors and Administrators § 847; *see also* Nev. Rev. Stat. § 143.060 ("Actions for the recovery of any property . . . or to quiet title thereto, or to determine any adverse claim thereon . . . may be maintained by and against a personal representative in all cases in which the actions might have been maintained by or against the decedent."); *Jones*, 873 F.3d at 1128 ("[N]o proper plaintiff had been named" under Nevada law where the complaint "nam[ed] Jones's estate and father as plaintiffs (rather than naming the father as administrator of Jones's estate)."). Therefore, the judge below was correct to refuse to allow the "estate," as a mere concept, to be joined as a party. Indeed, because an estate is not a legal entity, the "Estate of Kit Dansker" only has meaning in Nevada insofar as certain machinery of the state courts is set in motion—a

will is probated, Letters Testamentary or of Administration are issued, an administrator is appointed, or the like. *Cf., e.g.*, Nev. Rev. Stat. § 132.120 ("Estate" defined); §§ 136.070, 139.120. As Judge Jones explained below, in order to open an estate, someone would have "to petition a Nevada probate court to appoint a personal representative under [Nev. Rev. Stat.] Chapter 138 (if there be a will), or an administrator or special administrator under Chapters 139 or 140 (if Dansker died intestate)." LN Management knew as early as 2013 that this had not been done, arguing in its filing that it "ha[d] also discovered that no one has effectuated any probate action . . . ." There is no indication in this record that probate proceedings were *ever* initiated by the Nevada courts in Dansker's regard, nor (which would also matter) if they were ever closed. Nor who the correct legal representative of Dansker's estate was or is. Therefore, the request to add an unknown, and perhaps nonexistent, executor (if the motion were to be so construed) is clearly improper.

On appeal, LN Management leans most heavily on the fact that in both 2013 and 2017 it identified one Lori Weber, "who claims to be the daughter of the decedent," whom it wished to have served and who, it argues, would have been a proper person to serve so as to bring in the estate. LN Management now argues that in light of this, its motions should have been granted and thus that diversity jurisdiction should have been destroyed.

It is, remarkably, still unclear whether Dansker's daughter is a proper representative of the estate for legal purposes—or even exists. Plaintiff proposed to join her "on behalf of the estate of Kit Dansker, *if the estate is substituted in* as the real party in interest in place of Kit Dansker." (Emphasis added.) This seems to duck, rather than solve, the essential problem that one must sue the correct legal

representative of the estate, not the estate as a concept. Put simply, there still is no evidence in the record that Weber was the correct legal representative of Dansker's estate, *nor* that LN Management had sought to sue her in her personal capacity as a potential heir to the property. The district court was correct to note that:

> LN has neither identified any legal representative of Dansker's estate nor, to the Court's knowledge, made any effort to have one appointed. LN has had several years since learning (no later than 2013) of Dansker's death (in 2009) to petition a Nevada probate court to appoint a personal representative under Chapter 138 (if there be a will), or an administrator or special administrator under Chapters 139 or 140 (if Dansker died intestate). Absent a successor with his or her own interest in the property— none has been identified—only a legal representative of Dansker's estate may sue or be sued. . . . And although the Court has jurisdiction to enter judgment on a civil common law claim against such a representative, the Court has no jurisdiction to appoint a representative in the first instance, which would be an act of administration of the estate. *See Marshall v. Marshall*, 547 U.S. 293, 311 (2006).

Moreover, LN Management's sloppiness in making its renewed motion before the district court, despite having been granted several months for jurisdictional discovery in 2017, raises the inference that it was not sufficiently diligent or serious about joining the estate to the quiet title action.

This suspicion persists on appeal, due to LN Management's continued conflation of the concepts of the estate versus its representative versus descendants of the decedent, and due to LN Management's generally cavalier language. (E.g., "The district court should have allowed substitution of the Estate, (or an individual representing the Estate *if it or Chase was so concerned*)[.]" (Emphasis added.)) In sum, we certainly cannot say that the trial judge abused his discretion by denying a motion to substitute, made in this form and with such deficiencies after so much litigation. Thus, diversity jurisdiction continues to exist.

## IV.  Conclusion

For the foregoing reasons, the judgment of the district court is **VACATED** and, holding that jurisdiction exists and the Federal Foreclosure Bar applies, we **REMAND** the case for proceedings in conformity with this opinion.[10]

---

[10] Costs on appeal shall be taxed against LN Management.