NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 1 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

THOMAS A. SEAMAN,

     Plaintiff-Appellee,

  v.

NEIL RICHARDSON,

     Defendant-Appellant.

No. 19-55670

D.C. No. 8:18-cv-00538-CJC-DFM

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Submitted July 9, 2020[**]
Pasadena, California

Before:  BERZON, COLLINS, Circuit Judges, and KATZMANN,[***] Judge.

Defendant Neil Richardson appeals the district court's order granting

summary judgment to Plaintiff Thomas Seaman in his capacity as the court-

appointed Receiver for PDC Capital Group, LLC ("PDC") and certain of its

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument.  See FED. R. APP. P. 34(a)(2)(C).

[***] The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

subsidiaries and affiliates.[1]  Specifically, the district court granted summary judgment to the Receiver on a single cause of action alleging that Richardson's acquisition of a lien against the property of a PDC affiliate was a fraudulent transfer under the California Uniform Voidable Transfers Act, *see* CAL. CIV. CODE § 3439.04(a)(2).  Reviewing de novo, *see LN Management, LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 949 (9th Cir. 2020), we affirm.

1.  Richardson contends that there is a genuine issue of material fact as to whether the relevant PDC affiliate "receiv[ed] a reasonably equivalent value in exchange" for the lien in Richardson's favor.  CAL. CIV. CODE § 3439.04(a)(2); *see also Kirkeby v. Superior Ct.*, 93 P.3d 395, 399 (Cal. 2004) (creation of a lien counts as a "transfer" under § 3439.04(a)).  We disagree.

a.  PDC was a real estate development company that offered investments in U.S. properties to foreign nationals who sought to participate in the U.S. "Immigrant Investor Program."  That program, "colloquially referred to as the EB-5 program, provides legal permanent residency in the United States to foreign nationals who invest in U.S.-based projects." *SEC v. Hui Feng*, 935 F.3d 721, 725 (9th Cir. 2019) (citing 8 U.S.C. § 1153(b)(5)(A)).  Two such investment offerings are at issue here.

---

[1] The receivership was imposed in connection with an SEC enforcement action against PDC and related persons and entities. *See SEC v. Francisco, et al.*, No. 16-cv-2257 (C.D. Cal.).

The first involved the "Westgate Property" in Sacramento, California, which would be acquired and developed by an affiliate of PDC known as SAL Westgate, LLC. The plan was for ten foreign investors to participate in this project by purchasing, for $500,000 each, limited partnership stakes in SAL Westgate, LLC's parent entity, SAL Westgate, LP. The general partner of SAL Westgate, LP was Summerplace Management, LLC ("Summerplace"), a PDC subsidiary that in turn committed to contributing $3.5 million to SAL Westgate, LP. In March 2014, SAL Westgate, LLC acquired the Westgate Property for $1.95 million. However, Summerplace never contributed the $3.5 million it had promised, and PDC ultimately raised only $4 million of the anticipated $5 million in investor funding.

The second investment involved the "Carmichael Property" in Carmichael, California. It involved a similar structure, in which (1) Summerplace would be the general partner of SAL Carmichael, LP, and ten foreign investors would be limited partners; and (2) SAL Carmichael, LP would have a wholly owned subsidiary, SAL Carmichael, LLC, which in turn would own the Carmichael Property. But when SAL Carmichael, LLC purchased the Carmichael Property in July 2015 from an entity called First Capital Mortgage Loan Corporation ("FCM"), that property was subject to a *lis pendens* in Richardson's favor as a result of a wholly unrelated lawsuit between Richardson and FCM. Notably, by that time, Richardson worked for PDC. Richardson agreed to release the *lis pendens* against the Carmichael

3

Property, and in exchange he was granted a $2 million lien against the *Westgate* Property. The recording of this lien was not disclosed to SAL Westgate, LP's limited partners.

b. As the district court correctly noted, the two projects involved different PDC affiliates that had different limited partners, and there is no evidence in the summary judgment record that SAL Westgate, LLC received anything of value when its primary asset—the Westgate Property—was saddled with a $2 million lien in favor of a *different* project. Richardson argues that the Westgate affiliates tangentially benefited from the removal of the *lis pendens* on the Carmichael Property, because, absent such removal, PDC might have lost its investment in the Carmichael Property, which "would have affected the Westgate project." But the only support in the summary judgment record for this theoretical indirect benefit to the Westgate affiliates is Richardson's conclusory and unsupported speculation, and that is not enough to create a genuine issue of material fact. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"). Moreover, to the extent that Richardson's theory is that difficulties concerning the Carmichael Property would have rendered PDC unable to pay its $3.5 million obligation to the Westgate project, this theory cannot be squared with the fact that, even with the *lis pendens* removed from the Carmichael Property, PDC still did not

4

pay the $3.5 million. In all events, even assuming arguendo that there was some non-zero hypothetical indirect benefit to SAL Westgate, LLC, there is no genuine dispute that, on this record, any such theoretical benefit was *not* "reasonably equivalent" to being burdened with a formal $2 million lien. CAL. CIV. CODE § 3439.04(a)(2).

2. The district court also correctly held that the undisputed evidence established that SAL Westgate, LLC's "remaining assets . . . were unreasonably small" in relation to its business and that it had no "ability to pay" its debts as they became due. Richardson argues that the focus should have been on the PDC "organization as a whole" rather than specifically on SAL Westgate, LLC. But Richardson cites no authority in support of this contention, which directly contravenes the statutory mandate to consider the situation of the "debtor" that "incurred" the "obligation" in question, CAL. CIV. CODE § 3439.04(a)(2). Here, that is SAL Westgate, LLC.

Finally, Richardson points to the money that had been raised by SAL Westgate, LP, and the assets that SAL Westgate, LLC had. But Richardson does not address the district court's discussion of the record evidence concerning SAL Westgate, LLC's countervailing liabilities, and this argument therefore fails.

**AFFIRMED.**