NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 14 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOSHUA C. MAYNARD,

    Plaintiff-counter-
    defendant-Appellant,

  v.

USAA FEDERAL SAVINGS BANK,

    Defendant-counter-claimant-
    Appellee.

No.   23-15566

D.C. No. 4:21-cv-04519-JSW

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Submitted April 14, 2025[**]
San Francisco, California

Before: FRIEDLAND, BENNETT, and BADE, Circuit Judges.

Joshua C. Maynard appeals the district court's grant of summary judgment

in favor of USAA Federal Savings Bank ("USAA FSB"), as well as several other

decisions concerning Maynard's motions to amend his complaint and to limit

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

discovery. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings.

1. We review de novo a district court's grant of summary judgment. *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 819 (9th Cir. 2023). Viewing the evidence in the light most favorable to the non-movant, Maynard, we "determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (quoting *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021)).

Maynard's primary argument on appeal is that he acquired title to his 2014 Dodge Durango free of USAA FSB's security interest by purchasing it from X-Men Towing in a lien sale in June 2020. We disagree.

As an initial matter, to the extent that Maynard argues that the Loan Agreement with USAA FSB terminated after he surrendered the Durango in February 2020, that assertion is unsupported by the plain language of the agreement. *See Budget Fin. Plan v. Sav-On Food Club*, 283 P.2d 694, 697 (Cal. 1955) (explaining that repossession does not automatically "terminate[] the contract," but rather "[t]he terms of the contract . . . are determinative"). The contract states that "choosing any one or more" remedies does "not give up [the] right to use any other remedy." USAA FSB's attempted repossession of the Durango in February 2020 therefore did not automatically terminate the Loan

2

Agreement. *See D. N. & E. Walter & Co. v. Efficient Inv., Inc.*, 72 Cal. Rptr. 779, 781 (Ct. App. 1968). Thus, the Loan Agreement and USAA FSB's lien were still in effect when Maynard purchased the Durango in the June 2020 lien sale.[1]

The general rule under the California Commercial Code is that "a buyer of goods d[oes] not take free of a prior security interest" unless "authorized by the secured party." *Brasher's Cascade Auto Auction v. Valley Auto Sales & Leasing*, 15 Cal. Rptr. 3d 70, 77 (Ct. App. 2004); *see* Cal. Com. Code §§ 9201(a), 9315(a)(1). Where, as here, "a security agreement expressly prohibits the disposition of collateral without the written consent of the secured party, in order for a court to find an authorization permitting disposition free of the security interest . . . there must either be actual prior or subsequent consent in writing by the secured creditor manifesting a purpose to authorize the disposition free of the security interest." *Cent. Cal. Equip. Co. v. Dolk Tractor Co.*, 144 Cal. Rptr. 367, 371 (Ct. App. 1978).

Regardless of whether USAA FSB had constructive knowledge of the Notice of Pending Lien Sale that "was mistakenly routed to the wrong department," it is undisputed that USAA FSB never provided written consent for

---

[1] Maynard concedes that his bankruptcy in October 2019 did not discharge USAA FSB's security interest in the Durango. *See Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy.").

3

X-Men Towing to sell the Durango free of its security interest. To the extent that Maynard argues that USAA FSB's failure to timely object to the lien sale demonstrated acquiescence to the sale, that argument fails because California law holds that "[m]ere acquiescence is insufficient" to provide the requisite authorization. *Id.*

Another exception to the general rule that buyers do not take free of prior security interests is contained in California Commercial Code section 9320(a), which provides that "a buyer in ordinary course of business takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." A buyer in ordinary course of business "means a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind." Cal. Com. Code § 1201(b)(9).

Even if Maynard did not know that the lien sale violated USAA FSB's rights, section 9320(a) does not apply to Maynard's purchase of the Durango from X-Men Towing because the seller—X-Men Towing—did not create the security interest. *See Gordon v. Hamm*, 74 Cal. Rptr. 2d 631, 633 (Ct. App. 1998). Moreover, Maynard has not argued that X-Men Towing is "in the business of selling" vehicles, which precludes Maynard from being a buyer in ordinary

4

course.[2] *T & O Mobile Homes, Inc. v. United Cal. Bank*, 709 P.2d 430, 432 n.5 (Cal. 1985).

As a result, Maynard's purchase of the Durango in the lien sale was still subject to USAA FSB's security interest.[3] Maynard does not cite any authority supporting his assertion that the Certificate of Title he obtained from California without recording USAA FSB's interest somehow extinguished that interest.

Because Maynard decided upon entering bankruptcy not to continue to perform under the Loan Agreement, his rejection of the Loan Agreement "constitutes a breach of such contract" that is "deemed to occur 'immediately before the date of the filing of the [bankruptcy] petition.'" *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 374 (2019) (alteration in original) (quoting 11 U.S.C. § 365(g)).[4] Thus, the district court properly granted

---

[2] In holding that Maynard is not a buyer in ordinary course, we do not suggest that Maynard acted in bad faith in purchasing the Durango, but merely that Maynard did not meet the legal definition of that term under California Commercial Code section 1201(b)(9).

[3] Although the parties extensively discuss whether Maynard's removal of the license plates from the Durango was proper, the removal of the license plates does not factor into our resolution of the claims at issue.

[4] Because Maynard's rejection of the Loan Agreement is sufficient to affirm the district court's grant of summary judgment on USAA FSB's breach of contract claim, we do not reach Maynard's arguments that he did not "know[] or believ[e]" that "Doordashing with the Durango" violated the Loan Agreement.

summary judgment in USAA FSB's favor on its breach of contract counterclaim.[5]
*See Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (outlining elements of a breach of contract claim).

Because USAA FSB had the right to repossess the Durango under the Loan Agreement and California Commercial Code section 9609 given Maynard's default, the district court also properly granted summary judgment against Maynard on his conversion claim as to the Durango. *See Lee v. Hanley*, 354 P.3d 334, 344 (Cal. 2015) (outlining elements of a conversion claim, including "the plaintiff's ownership or right to possession of the property" and "the defendant's conversion by a wrongful act or disposition of property rights" (quoting *Welco Elecs., Inc. v. Mora*, 166 Cal. Rptr. 3d 877, 881 (Ct. App. 2014))).

Maynard also claimed that USAA FSB converted his personal possessions inside the Durango, but the district court failed to address that claim. USAA FSB also fails to respond in its brief on appeal to Maynard's arguments that summary

---

[5] Even though summary judgment was properly granted on USAA FSB's counterclaim, that does not mean that USAA FSB can recover Maynard's debt under the Loan Agreement that was discharged in bankruptcy, nor did the district court hold as much. *See* 11 U.S.C. § 524(a)(2); *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991) ("A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation."). Maynard is therefore incorrect in asserting that the district court's ruling "has given lenders free license to work around Chapter 7 bankruptcy rulings" by "re-saddl[ing] [debtors] with discharged debt."

judgment was improperly granted on that claim. *See LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 950 (9th Cir. 2020) ("Failure to respond meaningfully in an answering brief to an appellee's argument waives any point to the contrary."). Thus, we reverse the district court's grant of summary judgment as to Maynard's claim for conversion of his personal property inside the Durango and remand for further proceedings on that claim.

USAA FSB was entitled to summary judgment on Maynard's negligence and negligent misrepresentation claims.[6] Even if Maynard is correct that USAA FSB "has a legal duty to confirm [its] legal ownership interest in automobiles [it] seek[s] to repossess prior to taking such an action," any failure by USAA FSB to properly verify its lien is not the "*proximate or legal cause* of [Maynard's] resulting injury" because USAA FSB does have a legal security interest in the Durango. *Ladd v. County of San Mateo*, 911 P.2d 496, 498 (Cal. 1996) (quoting *Evan F. v. Hughson United Methodist Church*, 10 Cal. Rptr. 2d 748, 752 (Ct. App. 1992)). Similarly, Maynard's negligent misrepresentation claim fails because

---

[6] Maynard does not raise any argument in his briefs on appeal challenging the district court's dismissal of his claims for violations of the Fair Debt Collection Practices Act ("FDCPA") or the Rosenthal Act and has therefore abandoned those claims. *See Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007). Even if those claims had been preserved on appeal, Maynard's asserted FDCPA and Rosenthal Act violations are based on his belief that USAA FSB did not have a security interest in the Durango, so those claims fail as a matter of law.

USAA FSB's representation that it "had a current lien interest in the Durango" was true as a matter of law. *See Bily v. Arthur Young & Co.*, 834 P.2d 745, 768 (Cal. 1992) (outlining elements of negligent misrepresentation claim).

It follows from our holding that the district court also properly granted summary judgment on USAA FSB's counterclaim for a judgment declaring that (1) "the loan agreement remains effective[;]" (2) Maynard "is not a buyer in the ordinary course[;]" (3) USAA FSB "continues to have a security interest in the Durango[;]" (4) and Maynard "must return the Durango to [USAA FSB] and . . . facilitate the transfer of ownership to [USAA FSB]."

Construing Maynard's complaint liberally, as must be done because of his pro se status, *see Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007), Maynard also asserted a claim for unjust enrichment, *see Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Ct. App. 2008) ("The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" (quoting *Lectrodryer v. SeoulBank*, 91 Cal. Rptr. 2d 881, 883 (Ct. App. 2000))). Maynard contends that the Durango was inoperable when he purchased it in the lien sale, and he subsequently paid to repair it, which he would not done had USAA FSB responded to the Notice of Pending Lien Sale or otherwise informed Maynard that it still planned to repossess the Durango. Because "[n]either the district court's decision nor the parties' briefs

8

provide the necessary analysis" of an unjust enrichment claim, we remand for the district court to consider the merits of that claim "in the first instance." *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1114 (9th Cir. 2011).

2. Maynard also appeals the district court's denial of his motion for leave to amend his Complaint to add a claim for intentional infliction of emotional distress. "We review the denial of leave to amend for an abuse of discretion, but we review the question of futility of amendment de novo." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 534 (9th Cir. 2022) (quoting *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016)). The district court properly denied Maynard leave to amend because his claim was futile. *See Wilson v. Hynek*, 144 Cal. Rptr. 3d 4, 12 (Ct. App. 2012) (holding that plaintiffs failed to state an intentional infliction of emotional distress claim in a "creditor/debtor situation, whereby defendants were exercising their rights under the loan agreement").

To the extent Maynard also challenges the district court's denial of his motion for leave to amend to add a claim for violation of California Commercial Code section 9609(b)(2), Maynard does not explain how USAA FSB committed a "breach of the peace" while taking possession of the Durango, as would be needed for that claim to not be futile. Cal. Com. Code § 9609(b)(2).

3. Maynard challenges the district court's denial of his motion to quash

9

USAA FSB's subpoena to X-Men Towing. We "review the grant or denial of a motion to quash a subpoena for abuse of discretion." *Mueller v. Auker*, 700 F.3d 1180, 1194 (9th Cir. 2012) (quoting *In re Cal. Pub. Util. Comm'n*, 892 F.2d 778, 780 (9th Cir. 1989)). The district court did not abuse its discretion. The district court denied Maynard's motion to quash for lack of standing, and Maynard does not present any argument challenging that holding. *See United States v. Viltrakis*, 108 F.3d 1159, 1160 (9th Cir. 1997) ("[C]ourts have regularly held that a defendant or a putative defendant lacks standing to object to a subpoena issued to a nonparty witness."). To the extent that Maynard also argues that USAA FSB should not have been allowed to take discovery from him, we disagree. Because Maynard filed this suit, he was required to comply with his discovery obligations.

4. Lastly, Maynard contends that the district court's rulings show "prejudicial bias" in favor of USAA FSB. To the extent that Maynard contends that the district court judge committed an abuse of discretion by not recusing himself, we disagree. *See United States v. Hernandez*, 109 F.3d 1450, 1454 (9th Cir. 1997) (per curiam) ("[J]udicial rulings alone almost never constitute valid basis for a bias or partiality motion." (alteration in original) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))).

Maynard further argues that the district court "ignore[d] [the] allegations" he made in his brief in opposition to summary judgment that USAA FSB's counsel

10

failed to provide him with certain documents from discovery and lied about the facts. But Maynard has not shown any resulting prejudice from USAA FSB's counsel's alleged discovery violations because he has not explained how that evidence would have affected USAA FSB's entitlement to summary judgment. *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002). Nor has Maynard shown any prejudice from USAA FSB's counsel's alleged mischaracterization of the facts because "[c]ourts may not resolve genuine disputes of fact," *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam)), or "make any credibility determinations" on summary judgment, *id.*

Each party shall bear its own costs.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**